

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

AB:WPC/JSY/RK  *271 Cadman Plaza East*
F.#2018R01055  *Brooklyn, New York 11201*

July 9, 2021

**By ECF**

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Le Wei Zheng
               Criminal Docket No. 18-407 (BMC)

Dear Judge Cogan:

      The government respectfully submits this letter in advance of sentencing with respect to defendant Le Wei Zheng in the above-referenced case, which is scheduled for an in-person hearing on July 15, 2021, at 11:45 a.m.

      According to the pre-sentence investigation report ("PSR"), the defendant's adjusted offense level under the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") is level 15 and her Criminal History Category is Category I, resulting in a Guidelines range of 18 to 24 months' imprisonment.  See PSR at ¶¶ 34, 37 and 64.  The plea agreement in this case estimated the defendant's adjusted offense level at level 13 and her criminal history category as Category I, which yielded an estimated Guidelines range of imprisonment of 12 to 18 months.

      The government does not advocate for a Guidelines range beyond the estimated range in the plea agreement.  For the reasons set forth below, the government asks that the Court impose a sentence within the Guidelines range of between 12 to 18 months' imprisonment, in addition to a substantial Guideline fine.

I.      Procedural Background

On August 16, 2018, the defendant was arraigned on an Indictment charging conspiracy to traffic in counterfeit goods, in violation of 18 U.S.C. § 2320(a) (Count One), and trafficking in counterfeit goods, in violation of 18 U.S.C. § 2320(a)(1) (Counts Two to Five).  The defendant was charged at the same time as 21 other defendants in this and related cases.

On January 14, 2020, the defendant pleaded guilty before Magistrate Judge Vera M. Scanlon to Count One of the Indictment, pursuant to a plea agreement (the "Plea Agreement").  See PSR ¶ 1.  By docket order dated February 20, 2020, the Court accepted the defendant's guilty plea to Count One of the Indictment after reviewing the plea transcript.

In the related group of cases, nine defendants have been sentenced.  Another three defendants are scheduled to be sentenced before this defendant and her co-defendant husband.  This defendant and husband are scheduled to be sentenced the same day.

II.     The Offense Conduct

The defendant Le Wei Zheng owned and worked at a wholesale handbag and accessories business (called Proya Fashion) along with her husband, co-defendant Si Lung Chung.  See PSR at ¶¶ 12, 16, and 17.

During  a four year period, from 2013 to 2017, this defendant, along with her husband, sold handbags and wallets bearing counterfeit trademarks from their business.  She and her husband bought generic goods with removable metal emblems from, among other places, China.  They acquired other metal emblems bearing counterfeit trademarks.  They employed individuals (hereinafter, "taggers") to remove the generic metal emblems from a handbag or wallet and affix the metal emblems bearing the counterfeit trademark onto the goods.  They then sold the handbags and wallets with the newly affixed counterfeit emblems to customers.  As payment for the counterfeit goods, the defendant and her husband accepted money orders which were made payable to "CA" or "ASH," and later converted to "CASH".  See PSR at ¶ 14.  For example, attached as Exhibit 1 are money orders made out to CASH and deposited into the Proya bank account.  Exhibit 1 will be filed separately and under seal because it contains personal and banking information.

During four undercover operations in 2015, the defendant and her husband sold $18,100 (the wholesale price) in counterfeit goods to a cooperating defendant ("CD1").  CD1 had a pre-existing business relationship with the defendant and her husband in which CD1 would buy counterfeit goods from the defendant and her husband for resale.  For the four undercover purchases as well as for one order prior to CD1's cooperation with the government, CD1 paid the defendant and her husband $21,422 in separate money orders.

The defendants attempted to insulate themselves by using taggers. For example, during the first undercover operation, in a recorded phone call, the defendant referred to the tagger[1] who would be placing the counterfeit marks onto the handbags that she and her husband were trafficking. On March 6, 2015, CD1 spoke with the defendant. During the conversation, CD1 stated, "Hello, Le Wei. How are you?" The defendant responded, "Aye, how are you?" CD1 later states, "How many cheap goods do you have? How many styles?" The defendant responded, "How many do you want? …" CD1 replied, "I want to order eight styles, and then one box of wallets." The defendant later stated, "Manufacture it [meaning the counterfeit emblem] for you or what else?" CD1 responded, "Yeah, yeah, you asked someone [a tagger] to make it for me and then deliver it to my warehouse, okay?" The defendant replied, "I have received quite a few [orders] today… it has to be next week." CD1 asked, "When next week will it be done?" The defendant responded, "I don't know. I need to ask him [meaning, the tagger]."[2]

Examples of the tagged bags sold to CD1 from that first undercover transaction are below:



In this way, this defendant and her husband profited from their illegal scheme. This defendant agreed to a forfeiture amount of $95,000. Her husband and co-defendant also

---

[1] The government's investigation showed that this person a close friend, neighbor, and travel companion of the defendant and her husband.
[2] The original conversations were in Chinese and translated into English by the government.

agreed to forfeiture in the amount of $95,000.  This defendant and her husband have already remitted their forfeiture money judgment payment to the government.

III.     Defendant's Guideline Range

The government believes that the applicable Guidelines range is as follows:

| U.S.S.G. Description | U.S.S.G. Section | Levels |
|---|---|---|
| Base Offense Level | 2B5.3(a) | 8 |
| Loss Amount More Than $95,000 | 2B1.1(b)(1)(E)<br>2B5.3(b)(1)(B) | +8 |
| Acceptance of Responsibility | 3E1.1(a) and (b) | -3 |
| Total Offense Level |  | 13 |

In the Plea Agreement, the defendant stipulated to the above Guidelines calculation.

IV.     A Sentence Within the Guideline Range is Appropriate

a.  Legal Standard

In United States v. Booker, the Supreme Court held that the Guidelines are advisory and not mandatory, and the Court made clear that district courts are still "require[d] . . . to consider Guidelines ranges" in determining sentences, but also may tailor the sentence in light of other statutory concerns.  125 S. Ct. 738, 743 (2005); see 18 U.S.C. § 3553(a). Subsequent to Booker, the Second Circuit held that "sentencing judges remain under a duty with respect to the Guidelines . . . to 'consider' them, along with the other factors listed in section 3553(a)."  United States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005).  Although the Court declined to determine what weight a sentencing judge should normally give to the Guidelines in fashioning a reasonable sentence, the Court cautioned that judges should not "return to the sentencing regime that existed before 1987 and exercise unfettered discretion to select any sentence within the applicable statutory maximum and minimum."  Id. at 113.

Later, in Gall v. United States, the Supreme Court elucidated the proper procedure and order of consideration for sentencing courts to follow: "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines

range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, the court may not presume that the Guidelines range is reasonable. The court must make an individualized assessment based on the facts presented." Id. at 49–50 (citation and footnote omitted).

      b. <u>Application of 18 U.S.C. § 3553(a) Factors</u>

In this case, a particularized consideration of the factors set forth in Section 3553(a) demonstrates that a sentence within the agreed upon Guideline range is appropriate for this defendant.

The defendant committed her crimes with unabashed greed and a blatant disregard for intellectual property laws. The defendant was not a low-level street peddler. She was a Wholesale Distributor of counterfeit goods. The defendants' business model was ingenious—importing generic handbags with their own trademark and then popping that label off and affixing counterfeit labels, thereby creating counterfeit handbags. Additionally, that method allowed them to hide behind the veneer of being a respectable businessperson—to the casual observer, their store sold generic goods, but to the knowing customer, they sold counterfeit goods outside of public view.

Below are two photos from a border search conducted on September 29, 2015 on the defendant's phone, upon her return to New York from Guangzhou, China. They appear to show generic bags with labels affixed as well as with labels removed from the bag.



The defendant made no mistake nor did she have any misunderstanding of what she was doing. She made a deliberate choice. The defendant and her husband have been able to achieve a measure of financial success, in part, based upon a business model

they devised that disregarded intellectual property rights. The defendants made thousands of dollars from their illegal business and lived well because of that. See PSR ¶ 59.

Thus, a substantial fine is necessary in this case to afford adequate general and specific deterrence. It will not only dissuade the defendant from committing similar crimes in the future, but also deter others who are tempted to follow in her path.

As mentioned, this defendant and her husband will be the thirteenth and fourteenth defendants overall to be sentenced in these related cases. The following chart provides the prior sentences imposed by the Court. Each time-served sentence was for the period of time from the arrest of the defendant to the arraignment that same day when bail was set.

| Defendant and Case Number | Charge of Conviction | Guidelines Range | Primary Role | Sentence |
|---|---|---|---|---|
| Xue Wei Qu<br>18-CR-419 | Conspiracy to traffic in counterfeit goods:<br>18 U.S.C. § 2320(a) | 30 to 37 months | Wholesale Distributor | 12 months' and one day incarceration and $50,000 fine |
| Qi Feng Liang<br>18-CR-419 | Structuring:<br>31 U.S.C. §§ 5324(a)(3) | 10 to 16 months | Structured Money Transactions | Time-served[3] and $5,500 fine |
| Yong Lin Dong<br>18-CR-396 | Conspiracy to traffic in counterfeit goods:<br>18 U.S.C. § 2320(a) | 24 to 30 months | Wholesale Distributor | 12 months and one day in prison |
| Cai Ying Lin<br>18-CR-396 | Conspiracy to traffic in counterfeit goods:<br>18 U.S.C. § 2320(a) | 10 to 16 months | Wholesale Distributor | 2 years' probation |

---

[3] The Court also imposed one year of supervised release with a special condition of home confinement for 150 days.

| Jin Hua Zhang 18-CR-396 | Conspiracy to traffic in counterfeit goods: 18 U.S.C. § 2320(a) | 24 to 30 months | Wholesale Distributor | Time-served[4] |
| --- | --- | --- | --- | --- |
| Jian Hua Zhu 18-CR-396 | Conspiracy to traffic in counterfeit goods: 18 U.S.C. § 2320(a) | 24 to 30 months | Wholesale Distributor | Time-served[5] |
| Cheng Xu Yu 18-CR-396 | Conspiracy to traffic in counterfeit goods: 18 U.S.C. § 2320(a) | 24 to 30 months | Wholesale Distributor | Time-served |
| Sheng Miao Xia 18-CR-408 (S-1) | Conspiracy to traffic in counterfeit goods: 18 U.S.C. § 2320(a) | 30 to 37 months | Domestic Shipper | 12 months' and one day incarceration |
| Wei Mei Gao 18-CR-408 (S-1) | Conspiracy to traffic in counterfeit goods: 18 U.S.C. § 2320(a) | 30 to 37 months | Domestic Shipper | 6 months' incarceration |

Accordingly, taking into consideration the Section 3553 factors, including the need to provide just punishment, promote respect for the law, and deter the defendant and others from future unlawful conduct, a sentence within the Guidelines range of 12 to 18 months' imprisonment and a substantial fine is appropriate.

V.   Restitution, Forfeiture and Fine

As for forfeiture, this defendant has paid the $95,000 forfeiture money judgment.

As for restitution, the Probation Office has notified the victims in this case of their right to claim restitution. Because the victims have yet to file affidavits of loss, the amount of the defendant's mandatory restitution obligation is not presently ascertainable. See PSR ¶ 73. Accordingly, per 18 U.S.C. § 3664(d)(5), the government respectfully

---

[4] The Court also ordered that this defendant cooperate with immigration authorities regarding his removal to China.

[5] The Court also ordered that this defendant voluntarily depart the United States for China, within the one year of her supervised release.

requests that the Court set a date for the final determination of the victims' losses not to exceed 90 days from the date of sentencing.

As for a fine, the appropriate range is from $7,500 to $2,000,000.

VI. <u>Conclusion</u>

For the reasons set forth above, the government respectfully requests that the Court impose a sentence within the agreed upon Guideline range as described above as well as a Guideline fine.

Respectfully submitted,

JACQUELYN M. KASULIS
Acting United States Attorney
Eastern District of New York

By: <u>/s/ William P. Campos</u>
William P. Campos
Temidayo Aganga-Williams
Assistant U.S. Attorneys
(718) 254-6104/ (718) 254-6183

Robert Kaftal
Special Assistant United States Attorney
(718) 254-6033

<u>/s/ James Yoon</u>
James S. Yoon
Assistant Deputy Chief for Litigation
Computer Crime and IP Section
United States Department of Justice
(202) 514-1115

Enclosure (Exhibit 1 filed under seal)
cc: Renee M. Wong, Esq. (by ECF)
Counsel for Defendant Le Wei Zheng

Jennifer G. Fisher and
Frank Marcigliano
U.S. Probation Officers
(by ECF)